**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RUFUS LOVELL BROOKS,

    Plaintiff,

vs.                                  CASE NO:  6:22-CV-00669-WWB-LHP

BROOKS CONSULTANTS, INC.;
TERI-LYNNE JOHANSSON AS
ACCOUNT DIRECTOR AT BROOKS,
INC., AS OPERATIONS MANAGER
AT LABYRINTH, AND IN HER
INDIVIDUAL CAPACITY; GERRY
WYSE, AS COO OF BROOKS, INC.
AND IN HIS INDIVIDUAL CAPACITY;
LABYRNTH INTERNATIONAL, LLC;
FUSION SOLUTIONS, INC.; FATIMA
ABBAS AS VP OF FUSION SOLUTIONS,
AND IN HER INDIVIDUAL CAPACITY;
SWI, INC.; ETEAM, INC.,

    Defendants.
_____/

**<u>DEFENDANT, TERI-LYNNE JOHANSSON'S, MOTION TO DISMISS COUNTS I, II, IV, V, VI AND VII OF THE SECOND AMENDED COMPLAINT AS THEY PERTAIN TO HER AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

Defendant, TERI-LYNNE JOHANSSON ("Defendant Johansson"), by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits this Motion to Dismiss Counts I, II, IV, V, VI, and VII of the Second Amended Complaint, For Compensatory, Assumed, And Punitive Damages (the "Second Amended Complaint")

[D.E. 29] filed against her by Plaintiff, RUFUS LOVELL BROOKS ("Plaintiff"), and in support thereof states:[1]

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AND GROUNDS FOR DISMISSAL

Plaintiff, in his seven Count Second Amended Complaint, alleges in six of those Counts that Defendant Johansson, in her individual capacity as an employee of named defendants Labyrinth International, Fusion Solutions, Inc., and Brooks Consultants, Inc., engaged in staffing decisions within the course and scope of her employment that allegedly caused him damages. *Second Amended Complaint,* ¶ 47. In particular, Plaintiff alleges that he was required to execute "right to represent" agreements with each of the named corporate recruitment agencies, not with Defendant Johansson, thereby giving those named corporate recruitment agencies the exclusive right to represent him to carriers or general contractors for potential jobs. *Second Amended Complaint,* ¶ 32. As such, all claims against Defendant Johansson are due to be dismissed because they fail to state a cause of action against her. Count I (Breach of Contract) and Count II (Intentionally Breached of Contract) of the Second Amended Complaint should be dismissed as they pertain to Defendant Johansson because she was not a party to the underlying contracts attached as Exhibit "A" and "B" to the Second Amended Complaint, and because Count II fails to state an actionable claim under Florida law. Counts IV, V, VI, and VII of the Second Amended Complaint should be dismissed as they pertain to Defendant Johansson because they fail to state an actionable claim under Florida law, and one or more are barred by the independent tort doctrine. *See Second Amended*

---

[1] Plaintiff Johansson has not filed a response to Count III of the Second Amended Complaint as it appears to offer allegations only against other defendants to this action.

*Complaint.* For the reasons set forth in more detail below, the Second Amended Complaint, as it pertains to Defendant Johansson, should be dismissed against her with prejudice.

## MEMORANDUM OF LAW

### I. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations mush be "plausible" and "must be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also Edwards v. Prime Inc.,* 602 F.3d 1276, 1291 (11th Cir. 2010). In addition to the above, the operative pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570).

A complaint must give the defendant fair notice of the bases for relief and the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In deciding a Rule 12(b)(6) motion to dismiss, courts must accept all factual allegations in the complaint as true and take them in the light most favorable to plaintiff. *Id.* at 94. However, "[l]egal conclusions without adequate factual support are entitled no assumption of truth." *Mamami v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). Moreover, "[f]actual allegations that are merely consistent with a defendant's

3

liability [also] fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted); *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

## II. Counts I and II Fail To State a Breach of Contract Claim Against Defendant Johansson

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs., Inc. v. GE Capital*, 765 So.2d 737, 740 (Fla. 5th DCA 2000) (citations omitted). A contract is to be construed in accordance with its plain language. *Seawatch at Marathon Condo. Ass'n, Inc. v. Guarantee Co. of N. Am.*, 286 So. 3d 823, 827 (Fla. 3d DCA 2019). In general, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms. *Whetstone Candy Company, Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003). Here, Plaintiff's breach of contract claims fail because no valid contract existed between Plaintiff and Defendant Johansson.

In support of his claims set forth in Counts I and II of the Second Amended Complaint, Plaintiff references and relies solely upon two versions of a "right to represent agreement" that he has attached to the Second Amended Complaint as Exhibits "A" and "B". *Second Amended Complaint,* ¶¶ 67, 69, 120; Exs. "A" and "B". A simple review of Exhibit "A", however, establishes that the parties to that alleged "contract" were Brook Consultants Inc. as the "Submitting Vendor Name", Rufus Brooks as the "Candidate Name", and Sprint Contractor Solutions. *See Exhibit "A"*. Similarly, a review of Exhibit "B" establishes that the parties to that "contract" were Brook, Rufus Brooks, and Ericsson ARP. *See Exhibit "B"*. Defendant Johansson is not mentioned or referenced in any way

4

in either of those documents, nor is she listed as a party to either transaction. Instead, these "contracts" are between Plaintiff and a corporate recruitment agency.

This lack of a contractual relationship between Plaintiff and Defendant Johansson is actually verified by Plaintiff's own allegations in the Second Amended Complaint. For instance, he alleges that:

> **Many of the staffing agencies**, including Labyrinth International, eTeam, Inc., Fusion Solution, SWI, Inc., and Brook, Inc., **required the contractors to sign** "right to represent" agreements or e-mail confirmations, ("RTR"), which **gives the agencies the exclusive rights** to represent the contractors to the carriers or general contractors for jobs. ¶ 32. (emphasis supplied).

He similarly alleges in his Second Amended Complaint that in order to obtain a contractor assignment with Ericsson, he had to have a "RTR" agreement **with the staffing agency**. ¶¶ 36. (emphasis supplied). And perhaps most telling, Plaintiff states in no uncertain terms that "Plaintiff **contracted with** Labyrinth International, Fusion Solution, Inc., and Brook, Inc. for jobs with Ericsson and Sprint." ¶¶ 46. (emphasis supplied). In short, Plaintiff concedes in his own words that his contractual relationship was with the corporate recruitment agencies, not with Defendant Johansson, who was merely an employee of such agencies. As such, she was not a "party" to these alleged contracts, and the absence of a contract between the Plaintiff and Defendant Johansson dooms his claims for breach of contract and intentionally breached of contract.

Moreover, it is unclear what Plaintiff is attempting to allege in Count II by claiming "intentionally breached of contract". To the extent he is attempting to merely restate "intention" as an element of a breach of contract claim, such a claim fails under Florida contract law for the reasons set forth above, and does not constitute a separate cause of

5

action.  If, however, he is trying to state an alleged violation of some other state or federal statute, such a claim would likewise be subject to dismissal because it is based on nothing more than an alleged breach of contract, without any reference to other authority. *See, e.g., Hache v. Damon Corp.*, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008*)*.  As such, Count II fails for the all of the reasons above, and thus Counts I and II as they pertain to Defendant Johansson must be dismissed.

### III.    Counts IV and V Are Barred By Florida's "Independent Tort Doctrine"

The elements of an intentional misrepresentation claim in Florida are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).  The Middle District Court of Florida, however, applies the rule that "the alleged duty in [a plaintiff's] tort claim cannot stem from a contractual relationship between the parties." *Mortgage Contracting Services, LLC v. J&S Property Services LLC*, 2018 WL 3219386, at *3 (M.D. Fla. July 2, 2018); *Goldson v. KB Home,* 2017 WL 1038065, at *3 (M.D. Fla. March 17, 2017) ("Federal district courts within Florida have cited Justine Pariente's statements to support the contention that in order to bring a valid tort claim, the party must still show that the tort is independent of any breach of contract claim.").

More specifically, under Florida's "independent tort doctrine", it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.  *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020).  Stated differently, "where the alleged fraudulent

misrepresentation is inseparable from the essence of the parties' agreement, the independent tort doctrine applies, and the parties are limited to pursuing their rights in contract." *Certified Collectibles Grp., LLC v. Globant, LLC*, 2021 WL 1214963, at *4 (M.D. Fla. Mar. 31, 2021).

In the Second Amended Complaint, Plaintiff's allegations and arguments in Count IV alleging "Intentionally Misrepresentation" and Count V alleging "Intentionally Fraudulent Misrepresentation" both allege supposed material misrepresentations that are indistinct and identical to the breach of contract allegations and claims set forth in Counts I and II of the Second Amended Complaint. In fact, the "right to represent" agreements and the alleged breach of such agreements are the sole basis for Plaintiff's claims in both Counts IV and V. *Second Amended Complaint*, ¶¶ 146, 149, 150, 162, 165, 166. Here, the alleged misrepresentations that Plaintiff claims were made to him stem from the alleged breaches of the contractual relationship between him and the corporate defendants, namely those same allegations set forth in Counts I and II. In other words, Plaintiff has simply attempted to recast his breach of contract claims under a different title, namely an alleged tort claim, which he is not permitted to do under Florida law.

Further, the damages that Plaintiff alleges relate to his misrepresentation claims are no different than the damages Plaintiff alleges in his breach of contract claims in Counts I and II. *Second Amended Complaint*, ¶¶ 126, 134, 176. Under Florida law, however, "[t]o bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract", and for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be "independent, separate and distinct from the

damages sustained from the contract's breach". See *Perez v. Scottsdale Ins. Co.*, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020).

In other words, Plaintiff has failed to distinguish between acts that were allegedly "misrepresentations" and acts which were allegedly breaches of the alleged contracts. As such, Plaintiff's misrepresentation claims are not distinct from the alleged breach of contract claims, and thus are barred by the independent tort doctrine. Therefore, Counts IV and V should be dismissed as they pertain to Defendant Johansson.

### IV. Count VI Fails To Meet The Level Of Conduct Necessary To State A Claim For Intentional Infliction of Emotional Distress Against Defendant Johansson

In order to state a cause of action for intentional or reckless infliction of emotional distress ("IIED"), a plaintiff must demonstrate that (1) the defendant acted intentionally and recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's emotional distress; and (4) plaintiff's emotional distress was severe. *Metropolitan Life Insurance Company v. McCarson*, 467 So.2d 277, 278 (Fla. 1985). Whether alleged conduct is sufficiently outrageous to meet this standard is a question of law, not of fact. *Muldrow v. State of Florida*, 2005 WL 2012776 (M.D. Fla. 2005); *Ponton v. Scarfone*, 468 So.2d 1009, 1010 (Fla. 2d DCA 1985).

Under Florida law, an IIED claim is actionable **only** when the plaintiff pleads conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life*, 467 So.2d at 278-279. It is not enough that the intent of the actor was tortious or criminal, and it is not enough that the conduct was

characterized by malice. *State Farm Mutual Automobile Insurance Co. v. Novotny*, 657 So.2d 1210, 1213 (Fla. 5th DCA 1995), *rehearing denied.*

For example, in *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575, n.7 (11th Cir 1993), the Eleventh Circuit Court of Appeals, applying Florida law, affirmed the dismissal of an IIED claim on the basis that the conduct alleged was not sufficiently "outrageous" when considering facts much more egregious than those alleged here. *Id.* That case involved (among numerous other allegations) hanging a rope noose from the plaintiff's work station, forcing the plaintiff into a physical altercation, intentionally transporting her to the wrong hospital during a nervous breakdown, and constructively discharging her. *Id.* at 1574 n.2. *See also*, *Short v. Immokalee Water & Sewer District*, 165 F.Supp.3d 1129, 1152-53 (M.D. Fla. Feb. 25, 2016) (holding that while alleged conduct, if true, was clearly offensive, it failed to rise to the level of outrageousness required for a claim of IIED where plaintiff alleged that he was subjected to a discriminatorily applied pay policy, issued unfounded discriminatory actions, his job duties were limited, and he was accused of watching pornography on his work computer and ordered to seek treatment for same); *Williams v. Worldwide Flight SVCS., Inc.*, 877 So.2d 869 (Fla. 3d DCA 2004) (finding that repeated racial epithets, false disciplinary reports, job termination threats, and assignment to dangerous duties were objectionable and offensive but did not rise to level of extreme and outrageous); *Bilbrey v. Myers*, 91. So.3d 887, 892 (Fla. 5th DCA 2012) (holding that pastor's actions of allegedly falsely telling various people that former church member was a homosexual with immoral character and trying to break up member's relationship with his fiancé did not rise to the level of outrageousness required for an IIED claim).

Similarly, as a matter of law in this case, Plaintiff's allegations are woefully lacking. Plaintiff's IIED claim is premised upon the allegations that Defendant Johansson "lied to the Plaintiff" regarding her efforts to represent him to organizations with job openings and allegedly knowing and making sure that Plaintiff was not going to be hired for any jobs, and otherwise merely recites the elements of a IIED claim in conclusory fashion. *See Second Amended Complaint* at ¶¶ 178-189. These vague and conclusory allegations, even if true, are clearly not "extreme" or "outrageous" enough to sustain a claim for IIED when viewed in conjunction with the extremely high standard set forth in the case law cited above. The allegations of Count VI as they pertain to Defendant Johansson simply do not support a cause of action for intentional or reckless infliction of emotional distress, and thus Count VI, as it pertains to Defendant Johansson, must be dismissed on this basis.

### V. Count VII Fails To Meet The Level Of Conduct Necessary To State A Claim For Tortious Interference With Prospective Economic Advantages Against Defendant Johansson

In order to state a cause of action for tortious interference with prospective economic advantages, a plaintiff must allege: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Hodges v. Buzzeo*, 193 F.Supp.2d 1279, 1286 (M.D. Fla. 2002). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been

completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994).

A tortious interference claim, however, exists only against third parties who are not parties to the business relationship. *In Re: Environmental Technologies International, Inc. v. Candler*, 2017 WL 2571590, * 8 (M.D. Fla. June 13, 2017); *Clifton v. Titusville Ctr. For Surgical Excellence, LLC,* 2016 WL 233879, at * 2 (M.D. Fla. Jan. 20, 2016). An agent of a corporate party to the business relationship cannot be held liable for tortious interference if she was acting within her capacity and scope as an agent of the corporation. *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013) (citing *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1367 (M.D. Fla. 2007)). Thus, "a claim for tortious interference ... cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. In other words, the interfering defendant must be a third party, a stranger to the business relationship." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (internal quotation marks and citations omitted). As stated by one Florida court, "[g]iven that corporate entities…must act through individuals, a tortious interference claim will generally not lie against employees and representatives of contracting entities." *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1099 (Fla. 1st DCA 1999).

The only exception to this privilege is when an employee of a contracting party acts "solely with ulterior purposes and the advice is not in the principal's best interest." *In Re: Environmental Technologies International, Inc.* 2017 WL 2571590 at * 8; *Alexis v. Ventura*, 66 So.3d 986, 988 (Fla. 3d DCA 2011) (quoting *O.E. Smith's, Inc. v. George*, 545 So. 2d 298, 2922 (Fla. 1st DCA 1989). This phrase "sole ulterior purpose" has been

11

interpreted by Florida courts to mean "a singular improper purpose detrimental to the employer's interests." *In Re: Environmental Technologies International, Inc.* 2017 WL 2571590 at * 8;  *Alexis v. Ventura*, 66 So.3d 986, 988 (Fla. 3d DCA 2011) (quoting *O.E. Smith's, Inc. v. George*, 545 So. 2d 298, 2922 (Fla. 1st DCA 1989).

In support of his claims of alleged tortious interference in Count VII, Plaintiff alleges that Defendant Johansson interfered with his prospective business relationships with Brook Consulting, Inc. and Labyrinth International. *Second Amended Complaint* at ¶¶ 196-201.  Plaintiff's own allegations in the Second Amended Complaint, however, establish that Defendant Johansson was at all relevant times acting in her employment capacity as the Account manager at Brook Consulting, Inc. and Labyrinth International. *Second Amended Complaint* at ¶¶ 47, 204.  Based on the legal authority set forth above, tortious interference claims generally will not lie against employees and representatives of contracting entities, which is what Defendant Johansson was at all times relevant to this action.

As for the potential exception to this bar, Plaintiff totally fails to present allegations that Defendant Johansson acted with the "sole ulterior purpose" of acting detrimental to her employers' interests.  In fact, all that Plaintiff offers are conclusory allegations that Defendant Johansson allegedly engaged in conduct that was "knowingly, intentionally, willfully, wantonly, or maliciously, with the intent to harm Brooks, or in blatant disregard of the substantial likelihood of causing him harm." *Second Amended Complaint* at ¶¶ 208.  In other words, Plaintiff alleges no singular "ulterior purpose", but rather offers multiple potential motivations, none of which she claims were allegedly detrimental to the interests of her employers, the actual parties to the relationship.  Moreover, Plaintiff has

utterly failed to provide allegations that Defendant Johansson engaged in any behavior that interfered with a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if she had not allegedly interfered.

As such, the allegations of Count VII as they pertain to Defendant Johansson simply do not support a cause of action for tortious interference with prospective economic advantages, and thus Count VII, as it pertains to Defendant Johansson, must be dismissed on this basis.

## LOCAL RULE 3.01(G) CERTIFICAITON

Pursuant to Local Rule 3.01(g), the undersigned has conferred by telephone with Plaintiff in a good faith effort to resolve this Motion, but the Parties were unable to resolve the issues in this Motion, and Plaintiff opposes this Motion to Dismiss.

WHEREFORE, Defendant, TERI-LYNNE JOHANSSON, respectfully requests that all of the Counts against her in the Second Amended Complaint be dismissed, with prejudice, and that the Court grant such other and further relief as this Court deems proper.

Dated this 24th day of June, 2022.

/s/ Paul J. Scheck
PAUL J. SCHECK, ESQ.
Florida Bar No.: 028487
Primary E-Mail:  pscheck@shutts.com
Secondary E-Mail: mljohnson@shutts.com
REED SEBASTIAN ARROYO, ESQ.
Florida Bar No. 1014893
Primary Email:  sarroyo@shutts.com
Secondary Email:  mljohnson@shutts.com

> SHUTTS & BOWEN, LLP
> 300 S. Orange Avenue, Suite 1600
> Orlando, Florida 32801
> Telephone:  (407) 835-6767
> Facsimile:   (407) 425-8316
> *Attorneys for Defendant Teri-Lynne Johansson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 24th day of June, 2022 with the United States District Court, Middle District of Florida, via their CM/ECF system, served via electronic mail to all counsel of record who have made an appearance in this case, and served by U.S. Mail and via electronic mail to:

Rufus Lovell Brooks
14016 Myrtlewood Drive
Orlando, FL  32832
brooks.rufus@yahoo.com

Alicia M. Chiu, Esq.
Ronald Charles DiNunzio, Jr.
Jackson Lewis, PC
390 N. Orange Ave., Ste. 1285
Orlando, FL  32801
alicia.chiu@jacksonlewis.com
charles.dinunzio@jacksonvlewis.com

John Bassett Trawick, Esq.
John B. Trawick, PLLC
3298 Summit Blvd.
Suite 5
Pensacola, FL  32503
john@jbtrawicklaw.com

> /s/ Paul J. Scheck
> Counsel of Record

ORLDOCS 19736662 1